## RICHARDSON vs. PACKWOOD.

One partner may accept title to real property for the benefit of the whole firm, but cannot alienate to their prejudice, without express consent on their part.

If a person possesses under a title which proves on investigation to be deficient, may reasonably have believed it was perfect, & valid, he ought not to be considered as a knavish possessor.

APPEAL from the court of the first district.

MATHEWS, J. delivered the opinion of the court. This is a petitory action in which the plaintiff claims title to one undivided half of three lots of land, in the city of New-Orleans, as set forth and described in his petition. The defendant denies all right in him to said property, and claims it for himself *in toto* as having acquired title thereto from the legal owners and possessors. There was judgment for the plaintiff-in the court below, from which the defendant appealed. Both parties claim title as derived from John M'Donough, through A. L.

Duncan, who it is agreed purchased, as agent for John Wood & Co., with their funds, or rather took, in payment of a debt due to said firm, the premises now in dispute, which he held as agent and attorney aforesaid, from the 18th day of July, 1808, by virtue of a deed of conveyance made and executed in the ordinary form of an act of sale, until the 1st of April, 1812, when he transferred and conveyed to George Barret, as surviving partner of the house of John Wood & Co., all the right and title to the property described in the act of transfer, which he had acquired, by virtue of the sale or giving in payment from his transferor. Afterwards, in the year 1817, Charles Barrett and other persons, claiming title to the disputed property, as legal representatives of said George Barrett, sold and conveyed the whole to the defendant, as belonging exclusively to them, by deeds of sale in the usual form, with a clause of joint warranty. The record comes up, loaded with documents and testimonial proof, which in our opinion have a very remote affinity to the real contest between the parties litigant : But as the defendant's counsel deduces one of these points from this extraneous matter, viz. that the action cannot be maintained, it is proper to notice it so far as may be necessary to a just refutation

East'n District.
*May*, 1823.

RICHARDSON
*vs.*
PACKWOOD.

of the defence, based on such evidence; and such, in our opinion, is all that which relates to the joint settlement of accounts between the partners of the house of John Wood and Co., which, together with the point raised upon it, we dismiss without further comment; except barely observing, that a vested right and title of partners to property acquired by them cannot, in any case, be affected by an unliquidated state of their partnership concerns. If the right and title be to things appertaining to their business as traders, such as necessarily make a part of their commercial transactions, they may be disposed of, by any one of the partners, without reference to the state of accounts between themselves. But real property acquired, which does not enter directly as a part of their stock in trade, must be subject to the rules by which the dominion of such things is transferred from one proprietor to another. A second reason in support of the same point is, that the plaintiff has not alleged or shown that he ever had possession of the premises now claimed against an adverse possession with title and good faith. Without enquiring into the right of action which may accrue to the purchaser of property to whom it has been sold, whilst held by a third person, claiming under a title opposed to that of

the vendor, we deem it sufficient to state that
the possession of Duncan, if he be considered
as agent for John Wood & Co., was a posses-
sion for every member of that company to the
extent of his right as a partner. Having ac-
quired the title and possession for all the part-
ners of that firm, although not in their names,
he could not, consistently with justice and good
faith, have assumed an adverse title and pos-
session, as he had the intention to acquire for
said firm and not for himself; which is fully
expressed in the deed of conveyance from him
to George Barrett.

There can be no doubt of the sufficiency of
the allegations in the petition to maintain the
plaintiff's action; and it only remains to in-
vestigate the titles of the parties to the suit, as
set forth by the pleadings.

As they both claim under M'Donough by
title derived through Duncan, it is unnecessary
to enquire into the consideration for which the
former transferred the property to the latter, or
into the validity of the vendor's title. The first
enquiry necessary is, for and on account of
whom did Duncan acquire the disputed pre-
mises? Secondly, What title did George Bar-
rett acquire from him? The first question is
fully and satisfactorily answered by the consi-

deration stated in the deed of conveyance to said George Barrett; for these two deeds must be taken and considered together as evidence of the conflicting titles of the parties to the present suit. The legal title to the premises was conveyed by M'Donough to Duncan, which by a public and authentic act he acquired in his own name, and might, (notwithstanding the latent equitable claim of John Wood & Co.) have conveyed it, with full and entire property and dominion, to a *bona fide* purchaser. This he never attempted to do, but faithful to his duties as agent for John Wood & Co., he held the real estate which he had acquired for them and with their means, until one of the partners appeared, to whom he conveyed as survivor of the house; which turns out not to be true, as plaintiff claims one fourth part of the property as a partner of the firm of John Wood & Co. and another fourth as purchaser from the heirs and representatives of one Wheeler, who was another partner of said firm, making together the one half claimed as above stated; as admitted by the statement of facts. But whether George Barret was or was not the survivor of the house in acquiring real estate for and in the name of the firm, he acquired a title for the legal representatives and heirs of the deceased

partners, if they were all dead except himself;
or, if part were living and part dead, then for
the survivors and representatives of the de-
ceased, according to their interest in the part-
nership. On the deed from Duncan to Barrett,
after the premises having expressed the sale or
transfer to be to the vendor as surviving part-
ner, &c., our attention is called to the *habendum*
which is said to restrict the title solely to him
and his heirs: In construing deeds, the first
rule is to give full effect to the intention of the
parties; which ought to be gathered from the
whole context of the instrument, so as to give
force to all its parts. Now were we to give the
effect to the clause of *habendum* insisted on by
the defendant's counsel, it would wholly des-
troy the premises so far as they relate to the
situation of the purchaser as partner of the firm
of John Wood & Co.; which would not be con-
sistent with the rule above stated. No violence is
done to either member of the act of transfer, by
considering that Barrett and his heirs were to
hold for the benefit of the firm aforesaid. But the
expression of the consideration of the transfer
from Duncan to Barrett puts the matter beyond
a doubt. He explicitly states that he acquired
and held the property for John Wood & Co.,
and in the capacity of their agent conveys to

East'n District.
*May*, 8123.

RICHARDSON
*vs.*
PACKWOOD.

them by means of the acceptance of one of their partners; whose act of acceptation conferred a title to all for three undivided portions, in conformity to the contract of partnership, of which they can only be divested by their consent evidenced, as required by the laws of this state in sales and conveyances of immovable property. One partner may accept title to real property, for the benefit of the whole firm, but cannot alienate to their prejudice without express consent on their part. From this view of the subject, we conclude that the two first points filed by the defendant, on the appeal, are not supported either by the law or evidence of the case; nor can they derive any support from the alleged silence of the plaintiff, during the negotiation and final sale from Barrett's successors to the defendant. It does not appear that he, the plaintiff, knew what interest they were about to alienate. The written title itself to George Barret was sufficient to put a purchaser of common prudence on his guard. Add to this, the occurrences which took place before a skillful notary and gentleman learned in the science of law, in the attempt of a sale through the agency of Mr. Brandegee, as detailed by the testimony of Mr De Armas and the latter; and we think, that there ought to be no hesita-

tion in declaring that this means of defence
entirely vanishes.

As to that part of the judgment of the district
court which relates to damages, we have some
doubt.  It is a principle of our law that a pos-
sessor in good faith, believing himself to own
property, is not responsible to the real owner
for the rents and profits of the property thus
holden, until after a judicial demand.  If a
person, who possesses under a title, which
proves on investigation to be deficient, may
reasonably have believed that it was perfect
and valid, he ought not to be considered (as
the law expresses it) a knavish possessor.  This
principle of law is just and equitable, and
ought to take effect in all cases, where the
want of good faith does not clearly appear.
Owners ought to know their rights, and ought
to pursue them promptly, and not suffer pos-
sessors who may believe themselves to be just
proprietors, to act as masters of the things
they possess, and be afterwards made respon-
sible (all at once) in large sums, as damages to
the true proprietors.  Notwithstanding our be-
lief, that the defendant did not acquire title to
more than one half of the property in dispute,
by the conveyance from Charles Barrett and

East'n District.
May, 1823.

RICHARDSON
vs.
PACKWOOD.

the heirs of George ; yet, from the nature of the whole transaction, it is thought that he may have been a possessor in good faith, for the whole, as it was all conveyed to him. The plaintiff should have pursued him sooner.

We therefore conclude, that the plaintiff and appellee has shown a good legal and equitable title, to one undivided half, of the lots of land, sued for as described in his petition ; but that the defendant is bound to account for one half the profits arising from said property, only from the judicial demand, and at the rate of six hundred dollars per annum : and consequently,

It is ordered, that the judgment of the district court be avoided and reversed, and this court proceeding to give such judgment as in their opinion the district court should have rendered, do order, adjudge and decree, that the plaintiff do recover from the defendant, the one undivided half of the lots, as described in his petition ; and he is hereby confirmed in his right and title to the same, as against the present defendant : And it is further ordered, adjudged and decreed, that the plaintiff do recover of the defendant, the sum of six hundred dol-

lars per annum, from judicial demand until he be put in possession of one half of the property adjudged to him, with costs in the court below ; and that the appellee pay the costs of this appeal : And it is further ordered, that the case be remanded, so that the proceedings directed by the decree of the district court, to enable the prayer for partition to be finally acted on, may be had in the court below.

*Maybin* and *Smith* for the plaintiff, *Duncan* and *Hennen* for the defendant.